108 So.2d 371

**KEYSTONE LIME WORKS, Inc.**

v.

**Vannie Lee SMITHERMAN.**

**7 Div. 480.**

Court of Appeals of Alabama.

Aug. 19, 1958.

Rehearing Denied Sept. 9, 1958.

Lipscomb, Brobston, Jones & Brobston, Bessemer, for appellee.

HARWOOD, Presiding Judge.

Suit below was for the alleged wrongful discharge of Vannie Lee Smitherman, and is based upon a breach of contract, as amended, made between the appellant, Keystone Lime Works, Inc., and the International Union of Mine, Mill and Smelter Workers, of which Smitherman was a member.

For convenience the Keystone Lime Works will hereinafter be referred to as the defendant, Smitherman as the plaintiff, and the International Union of Mine, Mill and Smelter workers as the Union.

The case was submitted to the jury on count A, as amended, after demurrers were overruled, and a plea in short by consent.

Count A, as amended, claimed damages for breach of a written contract dated 1 October 1952, as supplemented by agreement dated 6 November 1954 between the defendant and the Union, as agent for and acting in behalf of the defendant's maintenance employees in the defendant's plant in Shelby County, Alabama. The plaintiff was such maintenance employee, and a member of the Union, and a production employee within the terms of the agreement.

It was averred that the plaintiff was entitled as such employee to work as such production employee for the duration of the contract, as amended, and that such contract provided for certain benefits to employees employed under it, among which were seniority rights.

Needham A. Graham, Jr., and Wm. M. Acker, Jr., Graham, Bibb, Wingo & Foster, Birmingham, and Handy Ellis, Columbiana, for appellant.

It was averred that pursuant to the agreement negotiations were begun by the Union for an increased rate of pay and certain other modifications, and in connection with such negotiations an authorized strike, or work stoppage was called by the Union on 1 September 1954. The strike began on that day, and continued until 6 November 1954. During this strike the Union and the defendant were negotiating terms of a contract of employment on behalf of the employees, including the plaintiff, which were covered by the original agreement. That the plaintiff remained an employee of the defendant, but was not working because of the strike.

It was averred that on 6 November the defendant and the Union, on behalf of the Local Union No. 836 of the International Union, amended the contract of 1 October 1952, renewing the same retroactively.

A copy of the agreement of 1 October 1952, and the supplemental agreement of 6 November 1954 are attached to the complaint as exhibits, and the pertinent parts will hereinafter be set forth.

It is then further averred that immediately upon the execution of the supplemental agreement (Exhibit B), the defendant agreed in conformity therewith to reemploy all members of the Union upon seniority rights as provided in the contract of 1 October 1952; that the plaintiff was at all times a member of said Union in good standing and an employee entitled to seniority rights as provided in the original contract; that he was at all times ready, able, and willing, and offered to comply with the terms and conditions of said contract, and the defendant has failed to comply with said contract, in that on 6 November 1954 the defendant would not permit the plaintiff to work as he had a right to do under the contract and according to seniority rights; that thereafter the Union, on behalf of the plaintiff, attempted to avail itself of the grievance procedures provided in the contract, and the defendant refused to abide by such procedure, and refused to employ the plaintiff.

By an amendment to count B plaintiff further averred that after plaintiff's discharge defendant replaced him with an employee of less seniority, in violation of the provisions of the contract; that his discharge was without proper cause and deprived him of the benefits secured under the written contract and the supplementary contract.

The agreement of 1 October, between the defendant and the Union, provides, among other things:

"That it is the intent and purpose of the Parties hereto to promote and improve industrial relations between the employer and employees and to establish a basic understanding relative to rates of pay, hours of work and other conditions of employment at its Keystone plant in Shelby County, Alabama, during the life of this contract."

Paragraph 2 recognizes the Union as the exclusive bargaining agent for the employees.

By paragraph 3, foremen, supervisors, and clerical employees are excluded from the contract.

Paragraphs 4, 5, 6 and 7 pertain to hours of work, for double time, and for holidays, and what shall constitute a work week.

Paragraph 8 pertains to the management's prerogative in directing, hiring and discharge for cause.

Paragraph 9 relates to Union Committee Work.

Paragraph 10 relates to grievance procedure, and provides:

"a. The aggrieved workman must first take the matter up with his immediate foreman. If it is not satisfactorily adjusted, the workman must then submit the complaint to the grievance committee of the Local Union.

"b. The grievance committee must investigate the complaint, and if they think it is justified they must submit it in writing to a designated representative of the Company within seven days from the date the complaint was made to the foreman.

"c. If satisfactorily settled by the grievance committee and the Company Representative, the terms of the settlement must be put in writing, signed by all parties concerned, and constitutes a permanent and binding settlement of the complaint.

"d. If not satisfactorily settled by the above-named parties, it must then be submitted to and considered by an Executive of the Company and Union representative.

"e. If they cannot settle the complaint, then it must be submitted to arbitration and there shall be no strike or lockout pending arbitration."

Paragraph 11 relates to the selection of arbitrators.

Paragraph 12, Seniority, is as follows:

"It is agreed that in all cases of lay-offs, promotions recall, increases or decreases in forces, seniority shall govern when the men involved are qualified for the work. Authority to determine qualifications is vested in the Employer Management, but the Union shall have the right to discuss the determination with the management. The Union shall have a right to make a grievance or any such determination whenever it can show discrimination on account of Union activity, abuse of discretion, or clear mistake."

Paragraphs 13 and 14 relate to deductions from employees' pay, and pay days.

Paragraph 15 of the contract is as follows:

"This Agreement is made in good faith and for the purpose of settling and it does settle all contentions and misunderstandings now or heretofore existing between the parties hereto and with the express understanding that there are no side agreements and that this Agreement constitutes a full and complete expression of the agreement of the parties hereto."

Paragraphs 16, 17, 18, 19, 20, 21, 22 relate to matters not pertinent to this review.

Paragraph 23 provides that the agreement shall remain in force for one year from 9 July 1952, and will automatically renew itself for another year unless notice is served in writing by either party at least 30 days before the expiration date.

Paragraph 24 relates to vacations.

Paragraph 25 is as follows:

"*Agreements between the Parties to be put into Writing*:

"Any agreements between the Company and the Union arrived at as a result of meetings between the Union Committee and the Company shall be put into writing and signed by a representative of each party in order to guard against any misunderstanding or mistinterpretation of same."

Paragraphs 26, 27, and 28 are not material in this case.

The supplemental agreement of 6 November 1954 reads as follows:

"The agreement whose preamble reads as follows: 'This agreement made and entered into this 1st day of October, 1952, by and between Keystone Lime Works, Inc., (Hereinafter referred to as the "Company"), and the International Union of Mine, Mill and Smelter Workers, (Hereinafter referred to as the "Union"), in behalf of Local Union No. 836, representing the employees in the production and maintenance departments of the Company, located at Keystone, Alabama,' and amended from time to time, is hereby renewed, the date of the agree-

**24**

ment being from July 9, 1954, to July 9, 1955. No provision is included for reopening the wage question.

"If any provision of this contract is contrary to law, it is agreed that such provision shall be null and void. It is also mutually agreed that such illegality shall not affect the other provisions thereof."

The original agreement of 1 October 1952, as supplemented by the agreement of 6 November 1954 between the defendant and the Union acting for the employees, provides for the terms and conditions of work of the employees. The agreement is not a contract of employment.

By the very terms of the contract, any agreement between the Company and the Union arrived at as a result of meetings between the Union Committee and the Company shall be put in writing and signed by each party.

However, the plaintiff avers that "immediately upon the execution of said agreement, a copy of which is attached hereto and marked plaintiff's Exhibit B, the defendant agreed in conformity therewith to reemploy all the members of said Union upon seniority rights as provided in said contract, copy of which is attached to the original complaint as Exhibit A as supplemented by contract, copy attached hereto as Exhibit B, * * *."

This agreement is the crux of plaintiff's claim and it is to this agreement that we must look in determining if there is a breach of a contract of employment.

It not being averred that the agreement to reemploy all members of the Union was in writing, it must be presumed that such agreement was an oral one, since pleading, on demurrer, must be taken most strongly against the pleader. Grubbs v. Hawes, 173 Ala. 383, 56 So. 227.

A written contract may be amended, altered, or changed by a subsequent oral agreement between the parties. See 12 Am.Jur., Contracts, Sec. 428, pp. 1006, 1007.

However, it has long been settled by our decisions that if the contract is not in writing, which imports a consideration under the terms of Section 374, Title 7, Code of Alabama 1940, then the pleading must affirmatively allege a consideration supporting the contract. Federal Land Bank of New Orleans v. Mulkey, 228 Ala. 500, 153 So. 775; Moundville Lumber Co. v. Warren, 203 Ala. 488, 83 So. 479; Birmingham Ry., Light & Power Co. v. Littleton, 201 Ala. 141, 77 So. 565.

It is not averred in the complaint that there was consideration for the agreement to reemploy all of the Union members, which as before stated we must presume under the rules of pleading was an oral agreement.

Appellant's assignments of error Nos. 1 and 2 aver that the lower court erred in overruling its demurrer to the complaint, as amended, and that it erred in overruling each ground of the demurrer.

Grounds 6 and 29 of the demurrer aver that there was no consideration for the contract.

Ground 19 asserts that no contract between plaintiff and defendant whereby plaintiff was employed is set forth.

These grounds are argued in principle in appellant's brief, and in our opinion sufficiently to invite review. Lincoln Reserve Life Ins. Co. v. Armes, 215 Ala. 407, 110 So. 818.

It is our conclusion that the lower court erred in overruling defendant's demurrer to the complaint as amended, and therefore this judgment must be reversed.

Being of this conclusion we pretermit consideration of the other points raised in brief and argument by counsel for appellant.

Reversed and remanded.