267 So.2d 147

**CHARTER CORPORATION, a corp.**

v.

**LAWRENCE CONSTRUCTION AND DEVELOPMENT CO., INC., a corp.**

6 Div. 903.

Supreme Court of Alabama.

Sept. 28, 1972.

Robert S. Vance and Charles M. Thompson, Birmingham, for appellant.

Bill Fite, Hamilton, for appellee.

PER CURIAM.

On October 21, 1970, Lawrence Construction and Development Co., Inc., a Corp. (plaintiff) filed suit against Charter Corporation, a Corp. (defendant) in three counts, each claiming damages in the amount of $90,000. Count 1 is based on the alleged breach of a contract between plaintiff and defendant. Count 2 claimed damages from defendant due for work and labor done. Count 3 is a common count on an account.

The case resulted in a judgment in favor of plaintiff and against defendant in the amount of $37,750. From this judgment defendant has appealed.

Counts 2 and 3 are in substantially Code form, Count 2 claiming $90,000 for work and labor, and Count 3 claiming the same amount due by account. Neither of these counts is precisely in Code form, Count 2 failing to allege that the work and labor was done at the request of the defendant or had been accepted by the defendant, and Count 3 failing to allege that the account was due from the defendant.

In Turner v. Blanton, 277 Ala. 536, 173 So.2d 80, we held that such omissions were not always fatal, though error to overrule a demurrer to a count which failed to contain the statutory words "due from him" (defendant). There the court said:

> " . . . The rule is that if there is some defect of averment in the complaint or a plea, and the court has erred in holding such pleading good, nevertheless if there is evidence of the matter so omitted, and both parties try the issue as though such allegation were made, . . . and both parties have full opportunty to, and do, offer all the evidence they wish on that issue, we will not reverse the case for the error in such ruling on the pleading. (Citations omitted)" (277 Ala. 540, 173 So. 2d 83)

■ Here the defendant's (appellant's) demurrer was never ruled on. However,

there is a failure of proof that the work and labor sued for was done at the request of the defendant (appellant) or had been accepted by it; likewise, there is no evidence that the monies expended to improve the defendant's property was done for the benefit of the plaintiff or at its request. We think, therefore, that the only count which under the evidence could support the judgment is Count 1, for breach of contract.

A copy of the contract sued on was attached to the complaint and is, in material part, as follows:

"In consideration of One Dollar and other valuable considerations, the undersigned Seller, Lawrence Construction and Development Company, Inc., hereinafter called 'Seller', and the undersigned Purchaser, Charter Corporation, hereinafter called 'Purchaser', hereby contract and agree as follows: Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller the real estate located in Lamar County, which is described below. All of the lots are a part of the Norton Estates lands and a copy of the proposed subdivision is attached hereto and marked Exhibit 'A'.

[There follows a reference to three groups of lots designated Group 'A', Group 'B', and Group 'C', totaling 60 lots.]

"There is hereby paid and delivered by Purchaser the sum of $12,000.00 earnest money which shall serve as the consideration for the purchase of the lots in group 'A'.

"Purchaser agrees to tender to Seller One Thousand-five hundred dollars ($1,-500.00) per lot in cash at the time he takes title. The sale and purchase of Group 'A' will be closed prior to June 1, 1970.

"The closing of the sale and purchase of Group 'B' will take place prior to August 1, 1970.

"The closing of the sale and purchase of Group 'C' will take place with Eighteen (18) months from May 1, 1970.

"After proper notice and payment as provided for hereinabove, Seller agrees to execute to Purchaser general warranty deeds free from encumbrances, and taxes will be prorated as of the date of the delivery of the deeds.

"The undersigned seller agrees to furnish Purchaser an abstract of title commencing and assuming title at a point generally accepted by local practice, duly extended to date, showing a good and merchantable title, free of encumbrances unless herein excepted; or, at Seller's election a title insurance policy issued by (a) company qualified to insure titles in Alabama, in the amount of the purchase price, insuring the Purchaser against loss on account of any defect or encumbrance in the title, unless herein excepted, and in the event an abstract of title is furnished and the title to said property is alleged to be unmerchantable by the Purchaser or Purchaser's attorney, then Seller may elect to furnish such title insurance policy by a company qualified to insure titles in Alabama. Seller further agrees that municipal water shall be supplied to subdivision site, and further agrees that the purchase and acceptance of each individual lot shall be contingent upon the Purchasers having obtained a satisfactory percolation test.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals on this 1 day of May, 1970.

"LAWRENCE CONSTRUCTION AND DEVELOPMENT COMPANY, INC.
"BY /s/ Bob Lawrence
    "Its       President
        "SELLER
"CHARTER CORPORATION
"By /s/ K. L. Jones, Jr.
    Its   Vice-President
        "PURCHASER"

The complaint alleged that the defendant had breached the contract in that it had not paid the price of $12,000 due May 1, 1970, and had not paid the plaintiff $21,000 due for Group "B" lots mentioned in the contract.

Both parties agree that the written instrument did not contain all of the details of the agreement between them. Both parties agree, by the undisputed evidence, that the actual agreement between them was in effect as follows:

That at the time the contract was entered into, Lawrence Construction Company did not own the land but was negotiating for it; that after the contract was entered into, Lawrence Construction Company purchased 185 acres, of which 185 acres twenty-seven are involved in the contract. It was the testimony of Mr. Lawrence, President of Lawrence Construction Company, that after his company acquired title to the property, he began to subdivide this property into lots. It is not disputed that Lawrence Construction Company acquired the property under a deed dated July 1, 1970, and acknowledged by the grantors on July 22, 1970. The property was platted into lots by a plat recorded October 30, 1970. Mr. Lawrence testified that his company was not in a position to execute deeds to the specific lots referred to in the contract by the first of June or by the first of August, 1970. He further testified that after title to the property was acquired by his company, he began the process of subdividing it into lots; that he employed engineers for this purpose, rented the equipment for the construction of streets, entered into contracts for a water supply, etc. It was his testimony that the street clearing continued until approximately November 15, 1970, and that equipment was still being used for draining ditches and rough grading lots on the job until December 1, 1970.

However, this lawsuit was filed on October 21, 1970. It was Mr. Lawrence's testimony that he understood that he was to start work on the project immediately after the execution of the contract dated May 1, 1970, but he did not acquire title to the property until July, 1970. After that time, he devoted approximately four months to work on the project, but the suit was filed long before work on the project was completed. It was the testimony of both sides that their agreement contemplated that Charter Corporation would pay the amounts specified in the contract when the subdivision was completed and the lots were in an improved condition. It was not disputed that Lawrence Construction Company was incapable of delivering deeds to improved lots at the time the suit was filed. It was not disputed that shortly after the suit was filed, no water lines or power lines had been installed, lot corners had been located with wooden pens, and the streets had been only rough graded. Mr. Lawrence testified that his company was not in a position to execute deeds to the eight lots comprising Group "A" on June 1, 1970, nor on August 1, 1970; that his company had never conveyed any lots to Charter Corporation, had never tendered any deeds to Charter Corporation, and had never notified Charter Corporation that it was ready, willing or able to deliver the lots in accordance with the agreement.

In short, there is a total failure of proof that the plaintiff had complied with the terms of the agreement at the time suit was filed. The purchaser had never obtained a satisfactory percolation test on each of the individual lots which, by the terms of the memorandum agreement, was said to be one of the conditions for payment of the purchase price.

█ Thus, it appears that while Count 1 alleges that the plaintiff has performed its part of the contract, the proof totally fails to support such allegation. Where mutual covenants go to the whole consideration on both sides, they are dependent conditions and performance must be shown in an action by either of the parties for a breach or, in lieu thereof, an offer of performance must be alleged and shown. This

principle has not been observed here. Long v. Addix, 184 Ala. 236, 63 So. 982.

[3] Basically involved in this case is a situation where the parties made a memorandum of an agreement in writing; but the evidence is not disputed that this written instrument was never intended to reflect the total agreement between them. We have frequently said that written and oral parts of a contract must be construed together. King v. Capitol Amusement Co., 222 Ala. 115, 130 So. 799. It is obvious from reading the record in this case that, at the time the written memorandum was executed, Lawrence Construction Company was attempting to obtain title to a piece of property in Lamar County. There was testimony that the agreement executed on May 1, 1970, would aid Mr. Lawrence in obtaining title to this property. It is also clear from reading the evidence that the parties contemplated that if the property was acquired by Lawrence Construction Company, it would subdivide the property into building lots, install streets, lights, water, etc., and that Charter Corporation would buy the improved lots when completed at the amounts specified in the contract. The memorandum agreement provided that $12,000, described at ont point as earnest money and at another point in the memorandum as consideration for the initial eight lots comprising Group "A," would be paid upon closing of these lots, which was, according to the agreement, to take place prior to June 1, 1970. As indicated above, the evidence is not disputed that Mr. Lawrence had failed to acquire the property involved on that date and did not acquire it until the latter part of July, 1970. Obviously, no improvement had been made on the property and, in fact, the improvements contemplated by the parties had not been completed at the time the case was tried.

The plaintiff in this case began this lawsuit as one for damages, claiming breach of an expressed contract and, stated very simply, plaintiff has failed to show that it is entitled to damages for breach of the contract in that there was absolutely no evidence to the effect that it had complied with its contractual obligations. There is no evidence that any abstract of title has ever been furnished, or that any title insurance has ever been obtained, or that any percolation test has ever been made, and no evidence that the plaintiff corporation has ever tendered any deeds to these lots to the defendant corporation. The evidence indicates that the plaintiff corporation has not been in the position to tender any deeds to the lots described in the agreement, the subdivision not having been platted until the latter part of October. In fact, the lawsuit was filed before the plat of the subdivision was recorded.

While there are many assignments of error, we think the judgment of the trial court must be reversed because the evidence fails to support it.

Reversed and remanded.

HEFLIN, C. J., and HARWOOD, BLOODWORTH, MADDOX and SOMERVILLE, JJ., concur.